## GEORGE R. ROOTES v. LENA S. THOMAS.

CHANCERY PRACTICE. *Striking answer from file. Defective affidavit. Leave to amend.*

Where an answer denied the equity of the bill, and was stricken from the files at a term of the court held before the expiration of the time for taking depositions in the case, because of technical defects in the affidavit to it, the defendant should have been granted leave to amend the affidavit, although not present in court and consequently did not ask for such leave.

FROM the chancery court of, second district, Tallahatchie county.

HON. JULIAN C. WILSON, Chancellor.

Mrs. Thomas, the appellee, was the complainant in the court below; Rootes, the appellant, was defendant there. From a decree in favor of the complainant the defendant appealed to the supreme court.

Mrs. Thomas, then Mrs. McDowell, a young widow, promised to marry Mr. Rootes, but without giving him notice changed her mind and married one Penn Thomas. Notwithstanding her marriage to Thomas, she felt kindly toward Rootes and had great sympathy for him on account of his sufferings caused by the breach of promise of marriage. She formally executed and delivered to him a conveyance of the lands involved in this suit, claimed by him to have been a solace for his injuries. Shortly after the execution of the deed, however, Mrs. Thomas filed the bill in this cause, averring that the deed was executed at a time when she was mentally incapable of transacting business. She averred in her bill that at the time of the making of the deed she was addicted to the use of narcotics and was rendered thereby practically *non compos.* She averred in her bill that by the aid of medical treatment she had recovered her health and reason, and prayed that the deed executed to Rootes should be canceled. Rootes answered the bill and denied its equity. The bill, however, did not dispense with an oath to the answer, and defendant, Rootes, undertook to swear to the answer which he filed, and did so in the following words:

"STATE OF TENNESSEE, }
"COUNTY OF SHELBY. }

"George R. Rootes makes oath that he is the defendant in the foregoing answer, and that the matters and things therein set forth are true and correct, except as to such matters and things he states on information and belief, and those he believes to be true and correct.

F. M. MARLEY,
Notary Public,
Memphis,
Shelby County,
Tennessee.

"GEORGE R. ROOTES.

"F. M. MARLEY,
*Notary Public.*"

This answer was duly filed,. and at a term of the court held within four months after the filing of the answer (the time allowed by statute, Code 1892, § 1760, for taking depositions), the same was stricken from the files on complainant's motion because of defects in the affidavit. Rootes was not present at this term of the court either in person or by solicitor. After the striking of the answer from the files, the court below sustained the complainant's motion for a *pro confesso,* and thereupon rendered a final decree in Mrs. Thomas' favor, adjudging the deed executed by her to Rootes void.

*A. H. Murray, C. D. Harris,* and *Harris, Powell & Harris,* for appellant.

The formal requisites of an affidavit are, first, title; second, venue; third, signature; fourth, jurat; fifth, authentication. 1 Ency. Plead. & Prac., 311.

The first requisite (title) sufficiently appears, because the title of the cause appears by direct reference made in said affidavit, which is as follows: "George R. Rootes makes oath that he is the defendant in the foregoing answer." 2 Cyc., 19, 20, note "C," and cases cited; 1 Ency. Plead. & Prac., 312, notes 1 and 2.

Second requisite: The venue shows the county and state in which the affidavit was taken, which affidavit in question appears as follows: "State of Tennessee, County of Shelby." 1 Ency. Plead. & Prac., 314, note 1; 2 Cyc., 21, note 2.

Third requisite: The signatures of George R. Rootes, affiant, and of the notary public before whom the affidavit was made, appear in the affidavit in question. 2 Cyc., 23, sec. 2, note 20; 1 Ency. Plead. & Prac., 315, sec. C, notes 1, 2, and 3.

Fourth requisite: The jurat is that part of an affidavit where the officer certifies it was made before him. It is no part of the affidavit proper. *Veal* v. *Perkerson,* 47 Ga., 92. On an indictment for perjury the jurat is not essential. *Rex* v. *Emden,* 9 East, 437. Omission from jurat of words "before me"

is not fatal. *Cross* v. *People*, 10 Mich., 24. A paper purporting to be an affidavit will not be held defective because it does not appear to have a jurat. *Cleveland* v. *Stanley*, 13 Ind., 549.

"Where an injunction bill had been actually sworn to it was held that the injunction would not be dismissed because the master who took the affidavit had omitted to sign the jurat." *Capen* v. *Flemington*, 3 N. J. Eq., 467.

The legal presumptions are in favor of the validity of the affidavit. Certainly Marley, notary public, would not have signed his name and affixed his official seal to the affidavit without first having the affiant swear thereto. "Where an affidavit has been made and sworn to, and is correct in every respect except that a proper jurat is not annexed, such defects may usually be cured by amendment." 2 Cyc., 34, note 90. "Thus the officer who neglects to affix his signature to the jurat may be allowed to sign the same *nunc pro tunc.*" 2 Cyc., 34, note 91.

Fifth requisite: The jurat must be authenticated by the signature of the officer before whom the affidavit is made. 1 Ency. Plead. & Prac., 317, 318. The affidavit made to the answer was authenticated by the signature and seal of the officer before whom it was made. It is true the affidavit bears no date, but was made some time between the filing of the bill and the filing of the answer. "A date is not essential to an affidavit." 1 Ency. Plead. & Prac., 320, note F. "If an affidavit is untrue, perjury may be assigned upon it, though it bears no date or a wrong or impossible one." *Freas* v. *Jones*, 15 N. J. L., 20; 2 Cyc., 29, note E. Clerical errors will not vitiate affidavits. 1 Ency. Plead. & Prac., 321, note 4; *Schwartz* v. *Baird*, 100 Ala., 154.

As to the sufficiency of affidavits in general: *Trice* v. *Jones*, 52 Miss., 138; *Dunlap* v. *Clay*, 65 Miss., 454; 1 Ency. Plead. & Prac., 320, note 4; 2 Cyc., 27, 28, note 3.

Affidavits, if made in good faith and reasonably sufficient, should be held good.

The action of the court below in not allowing defendant at

least a reasonable time to amend his answer or the affidavit thereto was without equity, and to summarily dismiss defendant's answer without notice or leave to amend, denied to him his day in court and a trial upon the merits; and for courts to sanction such would justly bring judicial proceeding into contempt.

*McWillie & Thompson,* and *S. R. Coleman,* for appellee.

Five things are vitally essential to the validity of an affidavit in all judicial proceedings—namely, first, where it was made; second, when it was made; third, by whom it was made; fourth, before whom the instrument was sworn to; fifth, to what suit or judicial proceeding, if any, it relates.

If the instrument shows these five ingredients, and each of them, it is what it purports to be—an affidavit; but if it lacks any one of the ingredients enumerated, it is not an affidavit, but an absolute nullity, and cannot be judicially entertained for any purpose without doing violence to an honest administration of public justice.

In regard to the first requisite—where was it sworn to?—this goes directly to the jurisdiction over the crime of perjury. The grand jury of one county has nothing to do with crimes committed in another. In the case of *Cook* v. *Straats,* 18 Barbour, 407, the supreme court of New York refused to entertain as an affidavit a paper purporting to have been sworn to before the commissioner of deeds of the city of Buffalo, because it had no venue showing the county in which the oath was administered.

There is nothing in the pretended affidavit to the answer in this case to show where the oath was made. The heading, "State of Tennessee, County of Shelby," simply shows where the recital of the making of the oath was written.

In regard to the second essential—when was the oath made? If perjury has been committed, this goes directly to the question of time within which a prosecution therefor may be lawfully

instituted. There is nothing in the pretended affidavit in this case to show when the oath was made.

In regard to the third essential, it probably sufficiently appears that Rootes made the oath.

In regard to the fourth essential—before whom was it sworn to? If perjury was committed, this goes to the identity of the officer whose authority has been tampered with. There is nothing in the pretended affidavit to show that it was made before Marley. Marley simply signed his name to the writing; nothing to show that the oath was made before him, or before somebody else who was present with him, or that the witness was sworn even by Marley or anybody else. The courts generally refuse to entertain as an affidavit any paper from the jurat of which the words *"before me,"* or like words, have been omitted. The defect is not a mere irregularity, but is one of jurisdiction. It was said by Coleridge, justice, in *Queen* v. *Inhabitants of Bloxham,* 51 E. C. L., 526—a case specially commended to the court—that, although the objection may seem of but little importance, "if ever we are to use strictness, it should be on affidavits and all that relates to their forms." See *Smart* v. *Howe,* 3 Mich., 590; 1 Tidd's Practice, 494.

In regard to the fifth essential to an affidavit, we will make no comment, since it is generally held that an affidavit to a pleading may be referred back to the beginning of the pleading and be supported by its style, etc.

There is certainly nothing in the affidavit under consideration to show that the oath of Rootes was made before Marley, the notary public, and nothing except the seal to show the territorial jurisdiction of the notary. There is nothing to show where Rootes made the affidavit (the caption only fixes the place where the recital is made, that he makes oath, etc.), and consequently the venue of a prosecution for perjury cannot be ascertained. The notary simply signs the writing, without anything to show that he administered an oath to Rootes. *Barhydt* v. *Alexander,* 59 Mo. App., 188; *People* v. *DeCant,* 12 Hun. (N.

Y.), 378; *Lane* v. *Morse,* 6 How. Pr. (N. Y.), 394; *Smith* v. *Richardson,* 1 Utah, 194; *United States* v. *Burr,* 25 Fed. Cas., No. 14,692c.

While there are authorities seemingly to the contrary, yet the great majority, if not all, of them relate to affidavits made within the jurisdiction of the court in which they were sought to be used, and they are upheld simply on the ground that the court took judicial knowledge of the existence and qualification of the officer having authority to administer oaths within the particular judicial district in which the officer resided and had authority. See generally, on the subject of affidavits, 2 Cyc., 26 to 29; Fletcher's Eq. Pl. & Pr., 464 to 465.

The case of *Trice* v. *Jones,* 52 Miss., 138, is not in conflict with the above authorities nor with our position in this case. It cannot be ascertained from the report what the body of the affidavit there under review contained, and we can easily conceive of a case where the conclusion, "Given under my hand and seal," would be entirely sufficient. We would have such a case where the body of the affidavit showed that the affidavit was sworn to before the officer.

WHITFIELD, C. J., delivered the opinion of the court.

It was manifest error not to allow the amendment of the jurat, if it should be conceded that it needed amendment.

*The decree pro confesso is set aside; the cause is reversed and remanded, to be proceeded with in accordance with this opinion.*